Harry LIKE and Doris Mae Armsby, individually and on behalf of all other similarly situated public assistance applicants, Plaintiffs,

v.

Proctor N. CARTER, as Director of the Division of Welfare of the State of Missouri,

and

Austin Hill, as Director of the Dept. of Health and Welfare of the State of Missouri,

and

J. P. Lynes, as Welfare Director of the City of St. Louis, Missouri,

and

William E. Robinson, as Treasurer of the State of Missouri,

and

John C. Vaughn, Comptroller and Director of Budget of State of Missouri, Defendants.

No. 70 C 50(2).

United States District Court, E. D. Missouri, E. D.

Sept. 9, 1970.

Richard D. Baron and Harold L. Sarner, The Legal Aid Society of the City and County of St. Louis, and Robert J. Hellrung, St. Louis, Mo., for plaintiffs.

John C. Danforth, Atty. Gen. of Mo., John C. Craft, Asst. Atty. Gen., Jefferson City, Mo., for Robinson and Vaughn.

Elmer G. Crowe, Edward D. Summers, Mo. Div. of Welfare, Jefferson City, Mo., and Eugene P. Walsh, St. Louis, Mo., for Lynes, Carter and Hill.

## MEMORANDUM

MEREDITH, District Judge.

This is a suit brought by the plaintiffs, Harry Like and Doris Mae Armsby, on behalf of themselves and others similarly situated, against Austin Hill, Director of the Department of Public Health and Welfare of the State of Missouri; Proctor N. Carter, Director of the Division of Welfare of the Department of Public Health and Welfare; J. P. Lynes, Welfare Director of St. Louis City; William Robinson, Treasurer of the State of Missouri; and John C. Vaughn, Comptroller and Director of the Budget of the State of Missouri, individually and in their official capacities. The basic allegations of the complaint are that Missouri participates in several programs under the United States Social Security Act, 42 U.S.C. § 301; that 42 U.S.C. 302(a) (10), 42 U.S.C. § 302(a) (8), 42 U.S.C. § 1202(a) (11), and 42 U.S.C. § 1382, require aid to be furnished with reasonable promptness, that the regulations interpreting these sections, *Handbook of Public Assistance Administration*, Part IV, § 2200(b) (3), require action to be taken on a request for aid within thirty days, and that no action was taken on plaintiffs' applications for benefits within thirty days. This is said to have violated plaintiffs' rights to due process and equal protection. The plaintiffs seek declaratory and injunctive relief. This Court has jurisdiction under 28 U.S.C. § 1343(3) and (4) because of the existence of a federal claim.

The plaintiffs bring this action as a class action on behalf of others similarly situated. It is the opinion of the Court that this action cannot be maintained as a class action under Rule 23, F.R.Civ.P. The questions of fact involved with different individual applicants who have not received a determination within thirty days vary greatly. Because of the factual differences between current and potential applicants, it cannot be said that there is a class within the meaning of Rule 23.

The State of Missouri participates in the following programs under the United States Social Security Act, 42 U.S.C. § 301 et seq.: (1) Old Age Assistance (OAA), 42 U.S.C. §§ 301–306; (2) Aid to Families with Dependent Children (AFDC), 42 U.S.C. § 601–610; (3) Aid to the Blind (AB), 42 U.S.C. §§ 1201–1206; (4) Aid to the Permanently and Totally Disabled (APTD), 42 U.S.C. §§ 1351–1355; (5) Aid to the Aged, Blind or Disabled (AABD), 42 U.S.C. §§ 1381–1385.

The parties have stipulated to the following facts:

Plaintiff Doris Mae Armsby applied for ADC on October 6, 1969, was deter-

mined eligible for ADC on January 15, 1970, and received her first check pursuant to said ADC application on January 30, 1970.

Plaintiff Harry Like applied for OAA on November 5, 1969, and was determined ineligible for OAA on February 10, 1970.

In the absence of a "normal" time necessary in the St. Louis City office of the Division of Welfare in arriving at a determination of the eligibility or non-eligibility of an applicant for ADC or OAA, "actual performance" lists have been prepared by that office which show:

"Average Elapsed Time In Processing Applications Cleared In February, 1970—St. Louis City", indicates averages of 63.4 days for OAA approvals, 69.1 days for OAA rejections, 65.8 days for ADC approvals, and 56.5 days for ADC rejections.

"ADC Decision—January, 1970", indicates a range of elapsed processing time per case in the St. Louis City office from 6 days to 182 days, and indicates the number of cases taking each amount of elapsed processing time within the range.

"OAA Decisions—January, 1970" indicates a range of elapsed processing time per case in the St. Louis City office from 21 days to 162 days, and indicates the number of cases taking each amount of elapsed processing time within the range.

The time necessary in the normal routine of the state office of the Division of Welfare (following a determination of eligibility in a local office and certification of that fact to the state office) to process a new claim and to issue a check is ordinarily 10 to 12 working days, as detailed in the Division of Welfare's statement, "Procedure on Claims in State Office".

The plaintiffs rely upon the following regulations:

*Handbook of Public Assistance Administration*, part IV, Section 2200(b) (3):

"A state plan for OAA, AFDC, AB, APTD must provide that: * * *

(b) (3) prompt action will be taken on each application, within reasonable State-established time standards (which, effective July 1, 1968, will not exceed 30 days in AFDC, OAA, and AB * * * "

*Handbook of Public Assistance Administration*, Part IV, Sections 2300 (b) (5) and 2300(b) (6):

"To assure the right to apply (IV–2200(b)): (5) Applicants are informed of the agency's time standards for promptness in acting on applications (see IV–2200(b) (3)) which is specified in agency policy, and that it covers the time from the date of the application to the date the applicants are determined eligible and receive their first assistance check or notice of denial of assistance, and of their right to request a hearing before the State agency if the standard is not met regarding their applications.

(6) Agency policies on standards of promptness for acting on applications are not used as a basis for denying applications; they are exceeded in practice only in unusual situations (e. g., where the agency cannot reach a decision because of failure or delay on the part of the applicant or an examining physician to provide needed information) and in a small percentage of cases, and in such instances, the case record clearly shows that the delay results either from circumstances within the claimant's control or from some administrative or other emergency that could not reasonably be controlled by the agency."

It is the plaintiffs' contention that the Missouri practice violates the federal statute and regulation. There is, and can be, no statutory claim in this case. The Missouri statutes and regulations are entirely consistent with their federal

counterparts. The controlling Missouri statute and regulation state:

§ 208.070, RSMo 1959, V.A.M.S.:

"Whenever the county office receives an application for benefits an investigation and record shall be promptly made of the circumstances of the applicant by the county office in order to ascertain the facts supporting the application. Upon the completion of such investigation the director of the division of welfare, or some one designated by him, shall decide whether the applicant is eligible for benefits and if entitled to benefits determine the amount thereof and the date on which such benefits shall begin. The director of county welfare shall notify the applicant of the decision."

Missouri Division of Welfare Regulalation No. 4.1:

"For OAA, ADC, and AB assistance applications (unless there are unusual or extreme circumstances), prompt disposition means that there shall not be more than 30 days between date of application and (a) the date of approval, if eligible; or (b) date of rejection, if ineligible. (Revised July, 1968)."

The plaintiffs have failed to exhaust their administrative remedies. Section 208.070, RSMo, requires "prompt" action on all applications. Missouri Division of Welfare Regulation No. 4.1 requires action within thirty days. Section 208.080, RSMo 1959, V.A.M.S. (Supp.1969), states:

"1. Any applicant * * * may appeal to the director of the department of public health and welfare from a decision of the division of welfare in any of the following cases:

"(2) If his application is disallowed in whole or in part or is not acted upon within a reasonable time after it is filed; * * *."

The plaintiffs did not appeal under this provision. There is no allegation that this remedy would be ineffective and there is certainly nothing in the record to indicate that it is ineffective. The regulations upon which the plaintiffs rely, *Handbook of Public Assistance,* Part IV, § 2300(b) (5), require the state to provide a hearing (such as the one described in 208.080), if the time standards are not met. The plaintiffs have failed to take advantage of a provision of the statute required by the regulations upon which they rely. It is the opinion of the Court that this is a failure to exhaust administrative remedies.

The failure to exhaust administrative remedies is sufficient grounds for dismissal. However, the Court will reach the merits of this case.

In King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), the challenge was to Alabama's substitute father regulation. The Court held that regulation was in violation of the federal statute. In Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), the Court held that a residency requirement violated the equal protection clause. In Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), and Wheeler v. Montgomery, 397 U.S. 280, 90 S.Ct. 1026, 25 L.Ed.2d 307, (1970), the Court held that lack of pretermination review violated the due process clause. In Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), the Court held New York's plan was in conflict with the federal statute. In Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), the Court held that Maryland's maximum grant regulation violated neither the federal statute or the Equal Protection Clause. Finally, in Lewis v. Martin, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970), the Court held that California's "man in role of spouse" regulation was in violation of the federal statute.

In the *Shapiro, Rosado,* and *Martin* cases, there was a variance between the state plan and the federal requirements. There is no doubt that the Missouri plan fully complies with the federal require-

914

ments. The federal statute and regulation require a plan that determines eligibility within thirty days. Missouri Regulation 4.1 requires a determination within thirty days. There is no conflict between the federal plan requirements and the Missouri plan.

The plaintiffs contend that the Missouri practice of not making a determination of eligibility within thirty days is unconstitutional. The federal requirements do not control because they require only the state plan to be consistent with the federal requirements. This Court has already found that the Missouri plan is consistent. The question presented here is: Does the Missouri Welfare Department's practice of violating its own regulation violate the constitutional rights of the plaintiffs? It is the opinion of this Court that it does not. It is clear that there is no racial or other form of discrimination practiced. That was not even alleged. There are no unconstitutional classifications present. This is unlike the *Shapiro* case, where a person was penalized for exercising his constitutional right to travel.

The affidavits of the defendants indicate that any delay past thirty days is due to administrative difficulties and the department's difficulty in maintaining a qualified staff of case workers. In other words, the problem is one of internal administration. So long as the Missouri plan conforms to the federal requirements and there are no constitutional violations, this Court will not interfere with the internal administration of the Missouri Department of Welfare. As the Court said in *Dandridge*, supra, 397 U.S. at 487, 90 S.Ct. at 1163:

"But the Constitution does not empower this Court to second-guess state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients."

Because of the failure to exhaust available administrative remedies and the above decision on the merits, the cause will be dismissed.