Harry LIKE et al., Appellants,

v.

Proctor N. CARTER et al., Appellees.

No. 20717.

United States Court of Appeals,
Eighth Circuit.

Sept. 16, 1971.

Harold L. Sarner, St. Louis, Mo., for appellants.

Edward D. Summers, Jefferson City, Mo., for appellees Carter and others.

John C. Craft, Asst. Atty. Gen., Jefferson City, Mo., for Treasurer and Comptroller.

Before VAN OOSTERHOUT, HEANEY and ROSS, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is a timely appeal by plaintiffs from final judgment dismissing their complaint. The facts, the pertinent state and federal statutes and regulations, the issues and the basis of decision are set out in Chief Judge Meredith's opinion reported at D.C., 318 F. Supp. 910.

The action is brought by Harry Like and Doris Mae Armsby, public assistance applicants, individually and on behalf of all similarly situated public assistance applicants. Defendants, who are sued individually and in their official capacities, are Austin Hill, Director of the Department of Public Health and Welfare of the State of Missouri; Proctor N. Carter, Director of the Division of Welfare of the Department of Public Health and Welfare; J. P. Lynes, Welfare Director of St. Louis City; William Robinson, Treasurer of the State of Missouri; and John C. Vaughn, Comptroller and Director of the Budget of the State of Missouri.

The State of Missouri participates in the following programs under the United States Social Security Act, 42 U.S.C. § 301 et seq.: (1) Old Age Assistance (OAA), 42 U.S.C. §§ 301–306; (2) Aid to Families with Dependent Children (AFDC), 42 U.S.C. §§ 601–610; (3) Aid to the Blind (AB), 42 U.S.C. §§ 1201–1206; (4) Aid to the Permanently and Totally Disabled (APTD), 42 U.S.C. §§ 1351–1355; (5) Aid to the Aged, Blind or Disabled (AABD), 42 U.S.C. §§ 1381–1385.

Plaintiffs' cause of action is based upon rights asserted under the provisions of the Social Security Act and regulations promulgated thereunder. Plaintiffs contend that they are entitled to have their applications for public assistance acted upon by state officials within thirty days of the filing thereof, that the state has failed to process the applications of the individual plaintiffs and members of their class within such time, and that plaintiffs have thus been denied due process and equal protection guaranteed by the Fourteenth Amendment of the Constitution of the United States, and have been denied civil rights afforded them by 42 U.S.C.A. § 1983.

Jurisdiction is based upon 28 U.S.C.A. § 1343(3, 4), and declaratory relief is sought pursuant to 28 U.S.C.A. §§ 2201, 2202.

Additionally plaintiffs contend that they and members of their class are entitled to have benefits retroactively computed and allowed from the thirty-first day after the filing of their applications.

The parties by stipulation agreed:

1. Doris Mae Armsby applied for ADC on October 6, 1969, was determined eligible on January 15, 1970, and received her first check pursuant to said ADC application on January 30, 1970. Plaintiff Harry Like applied for OAA on November 5, 1969, and was determined ineligible for OAA on February 10, 1970.

2. The average processing time for applications cleared in February 1970 ranged from a low of 56.5 to a high of 93.4 days in the categories of OAA, AFDC, PTD and AB.

3. Processing time for applications cleared in January 1970 ranged up to 182 days in the AFDC category with 90.1% of the determinations taking longer than 30 days, and up to 162 days in the OAA category, with 95.1% of the

determinations taking longer than 30 days.

4. Processing time for the first assistance payments was normally 12 days after certification of the determination of eligibility was made by the local office.

Forty-two U.S.C.A. § 602(a) (10) specifies as a condition for approval of a state plan for AFDC that such plan must afford opportunity for filing application and "that aid to families with dependent children shall be furnished with reasonable promptness to all eligible individuals." Similar requirements that applicants be processed with reasonable promptness apply to OAA, 42 U.S.C.A. § 302(a) (8), and AABD, 42 U.S.C.A. § 1382(a) (8). Handbook of Public Assistance Administration, promulgated by HEW, in Part IV, § 2200(b) (3), provides:

> "A state plan for OAA, AFDC, AB, APTd must provide that: * * *
>
> (b) (3) prompt action will be taken on each application, within reasonable State-established time standards (which, effective July 1, 1968, will not exceed 30 days in AFDC, OAA, and AB * * *."

The controlling Missouri statutes and regulations are set forth by the trial court in its opinion at p. 913 of 318 F. Supp. Section 208.070 V.A.M.S. includes a provision that investigation of applications for welfare benefits shall be promptly made. Missouri Division of Welfare Regulation No. 4.1 in pertinent part reads:

> "For OAA, ADC, and AB assistance applications (unless there are unusual or extreme circumstances), prompt disposition means that there shall not be more than 30 days between date of application and (a) the date of approval, if eligible; or (b) date of rejection, if ineligible. (Revised July, 1968)."

The trial court found it had jurisdiction under 28 U.S.C.A. § 1343(3), (4). Defendants in the trial court and here attack the trial court's jurisdiction. We are required at the threshold to satisfy ourselves as to the trial court's jurisdiction and our jurisdiction.

The jurisdictional issue in this type of case has caused courts considerable difficulty. The Second Circuit has carefully considered this problem in Johnson v. Harder, 438 F.2d 7, wherein it cites and discusses its prior decisions and Supreme Court decisions bearing upon jurisdiction. The court concludes that where colorable constitutional (equal protection and due process) claims have been raised, jurisdiction will lie. Support for sustaining jurisdiction is found in Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442; King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118; Campagnuolo v. Harder, 2 Cir., 440 F.2d 1225; Rodriquez v. Swank, N.D.Ill., 318 F.Supp. 289 (a three-judge case summarily affirmed by the Supreme Court July 1, 1971, 39 LW 3533); Worrell v. Sterrett, N.D. Ind., CCH Pov.L.R. ¶ 10,575.

Additionally defendants assert that the court lacks jurisdiction by reason of plaintiffs' failure to exhaust available state administrative remedies. Section 208.080 V.A.M.S. gives a welfare applicant the right to appeal to the Director of Public Health and Welfare if his application is not acted upon within a reasonable time. The record discloses that a number of eligible applicants did take such appeal and failed to obtain effective relief. The Director determined the applicants were too numerous and the case workers were too few to permit prompt handling of the applications, and hence that the delay was beyond the control of the Division of Welfare. Under the circumstances of this case, it is clear that exhaustion of state remedies is not a prerequisite to a federal suit to enforce federally guaranteed constitutional rights. Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647; McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622; Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492; Rodriquez v. Swank, supra.

Finally on the jurisdiction issue, defendants assert the action is barred by the Eleventh Amendment. Defendants are sued as individuals as well as in their official capacities. It is well established that jurisdiction exists to grant declaratory and injunctive relief against individuals who, acting under color of state law, deprive an individual of a federally guaranteed constitutional right. Ex parte Young, 209 U. S. 123, 28 S.Ct. 441, 52 L.Ed. 714; Board of Trustees of Arkansas A and M College v. Davis, 8 Cir., 396 F.2d 730.

Relief has been afforded in welfare cases for state violation of federally guaranteed constitutional rights of welfare recipients. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287; King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118.

No party has contended that a statutory three-judge court is required to adjudicate the issues presented by this case. Johnson v. Harder, supra, a case involving a comparable situation, holds:

> "Neither, of course, are three judges required as to appellant's claim that the state regulation conflicts with federal provisions which, by virtue of the Supremacy Clause, are controlling. [Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965).]" 438 F.2d 7, 13.

We agree.

We hold the court properly determined that its jurisdiction is established. We of course have jurisdiction to review the final judgment of the District Court.

Judge Meredith held plaintiffs were not entitled to prosecute this action as a class action and that the individual plaintiffs were entitled to no relief. The complaint was dismissed.

As a basis for reversal, plaintiffs urge:

I. The court erred in not permitting plaintiffs to maintain this action as a class action.

II. The court erred in determining that federal laws and regulations did not require the state to process and act upon the applications of plaintiffs and members of their class for OAA, AFDC, AB and AABD relief.

III. The court erred in failing to give plaintiffs appropriate relief.

We shall consider such contentions in the order stated.

## I.

The trial court held the action could not be maintained as a class action under Rule 23, Fed.R.Civ.P., because facts pertaining to the delay in processing applications vary from case to case. Factual differences are not fatal if common questions of law exist. Rule 23(a) (2) requires that there be common questions of law or fact. The class includes eligible St. Louis welfare recipients whose applications have not been acted upon within thirty days after filing. Common questions of law such as the interpretation and validity of the state and federal statutes and regulations are present. Other requirements of Rule 23 are met. The class is so numerous that joinder of all members is impractical. The claims of the named plaintiffs are typical of the class, and the representation of the class by the named plaintiffs will fairly and adequately protect the interest of the class. A class action under strikingly similar circumstances was upheld in *Rodriquez*, supra.

The court abused its discretion in refusing to permit the action to proceed as a class action. This determination undermines defendants' contention that this appeal should be dismissed as moot on the ground that the named plaintiffs' claims have been disposed of. Rights of members of the class require adjudication.

## II.

The court rejected plaintiffs' contention that the state's failure to conform to the federal requirement that eligibility be determined promptly and that payment be made to eligible applicants within thirty days after filing of the ap-

plication violated the constitutional rights of eligible applicants. In so doing, the court stated:

"The federal requirements do not control because they require only the state plan to be consistent with the federal requirements. This Court has already found that the Missouri plan is consistent. The question presented here is: Does the Missouri Welfare Department's practice of violating its own regulation violate the constitutional rights of the plaintiffs?

\* \* \*

"The affidavits of the defendants indicate that any delay past thirty days is due to administrative difficulties and the department's difficulty in maintaining a qualified staff of case workers. In other words, the problem is one of internal administration. So long as the Missouri plan conforms to the federal requirements and there are no constitutional violations, this Court will not interfere with the internal administration of the Missouri Department of Welfare." 318 F.Supp. 910, 914.

We agree that the federal and the Missouri statutes are substantially the same with respect to time requirements for passing on welfare applications. Both state and federal statutes require that applications of eligible welfare recipients be processed with reasonable promptness. Section 2200(b) (3) of the Handbooks, supra, provides that after July 1, 1968, state-established time standards for processing the applications shall not exceed thirty days. State Regulation 4.1, supra, conforms to the thirty-day standard except for inclusion of a clause in parentheses reading "unless there are unusual or extreme circumstances."

Defendants agree that the applications should be acted upon within thirty days; but take the position, apparently on the basis of a broad interpretation of the "unusual or extreme circumstances" clause, that the large volume of applications and the inability of the state welfare department to employ a sufficient number of competent case workers excuses compliance with the thirty-day requirement.

We doubt whether this is a reasonable interpretation of the state regulation but if it is, the regulation as interpreted goes beyond the controlling provisions of § 2300(b) (6) of the Handbook of Public Assistance Administration which reads:

"(6) Agency policies on standards of promptness for acting on applications are not used as a basis for denying applications; they are exceeded in practice only in unusual situations (e. g., where the agency cannot reach a decision because of failure or delay on the part of the applicant or an examining physician to provide needed information) and in a small percentage of cases, and in such instances, the case record clearly shows that the delay results either from circumstances within the claimant's control or from some administrative or other emergency that could not reasonably be controlled by the agency."

■ Defendants urge that the Handbook provisions do not have the force and effect of law because (1) they were not promulgated or adopted as regulations by the Secretary of HEW, (2) the formulation would not meet the requirements of the Administrative Procedure Act or the Federal Register Act, (3) the provisions constitute an enlargement of a statute enacted by Congress and are inconsistent with the federal statute and void.

Similar contentions were rejected in *Rodriquez*, supra, (pp. 295–296 of 318 F.Supp.), and Worrell v. Sterrett, supra.

The Handbook is cited as authority in King v. Smith, supra (pp. 317–318 of 392 U.S., pp. 2133–2134 of 88 S.Ct.).

Moreover, since both state and federal regulations adopted the thirty-day period as a measure of the reasonable time allowable for acting on applications, the controversy is with respect to allowable exceptions. The federal exceptions pro-

vided in Handbook Part IV, 2300(b) (5 and 6) are reasonable and are in full conformity with the federal act. The exceptions relate to delay caused by the applicant or within his control and to administrative or other emergency that could not reasonably be controlled by the agency, and reference is also made to the excusing circumstances arising only in a small percentage of cases.

■ It is established that the need of eligible welfare applicants for prompt relief is urgent and great, and that eligible applicants are entitled to prompt relief as a matter of right. In Goldberg v. Kelly, 397 U.S. 254, 264, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287, the Court holds:

> "For qualified recipients, welfare provides the means to obtain essential food, clothing, housing, and medical care. Cf. Nash v. Florida Industrial Commission, 389 U.S. 235, 239 [88 S. Ct. 362, 366, 19 L.Ed.2d 438] (1967). Thus the crucial factor in this context * * * is that termination of aid pending resolution of a controversy over eligibility may deprive an *eligible* recipient of the very means by which to live while he waits. Since he lacks independent resources, his situation becomes immediately desperate. * * * "

The record in the case before us reflects that the state's failure to act on applications within thirty days has persisted for a considerable time. In January 1970 the State Welfare Department failed to process over 90% of the applications within thirty days, the average processing time running from 56.5 to 93.4 days with delays running up to 182 days. The effect of the interpretation of the state regulation is to completely nullify the clearly expressed mandate of both the state and federal statutes that applications be promptly acted upon.

We find nothing in the record to indicate that the delays in our present case were caused by any fault of the applicants. The record reflects that there are courses which could be pursued by the State Welfare Department which would greatly minimize the delays. There is testimony that in some areas applications were allowed upon the basis of the applicant's representations. If the representations prove to be false, termination proceedings can be invoked and possible criminal penalties could be resorted to.

It would also appear that a more aggressive and effective action could be taken in recruiting to fill vacancies and that some shortcuts could be taken in the investigative procedure.

■ A twelve-day processing period after certification elapses before the issuance of a check. Such period appears to be excessive.

The thirty-day period was adopted in the federal regulations in 1968 after there had been extensive experience which afforded a basis for determining the time reasonably needed in the processing of applications. The expertise of the federal agency charged with the administration of the welfare program as to what constitutes a reasonable time is entitled to considerable weight. The effect of excusing the delay shown by this record would be to nullify the provisions of both the federal and the state statute requiring reasonable promptness in the processing of applications.[1]

---

1. It was stated in oral argument that HEW launched an investigation to determine whether Missouri was complying with certain provisions of the federal Social Security Act including the thirty-day application processing requirement. A hearing was held before a hearing examiner. We have been provided with a copy of the report and recommendations of the examiner dated May 3, 1971, in which the examiner recommends a determination that the Missouri time standard for determining eligibility for financial assistance for welfare applicants is not in conformity with federal laws, rules and regulations. Such determination has not become final. We have placed no reliance upon such determination in reaching our decision.

*Rodriquez,* supra, holds that it is not an element of plaintiffs' prima facie case to plead and prove that the delay was not caused by circumstances within their control.

The federal government makes substantial contributions to the states for use in carrying out the welfare program here involved. Conformity with the applicable federal rules and regulations is a prerequisite to eligibility for such aid. The state has failed to follow the required federal standards set forth in the federal statutes and regulations for the prompt processing of welfare applications.

### III.

■ We are satisfied that the plaintiffs as a minimum are entitled to a declaratory judgment determining that the applications of members of the classes here involved for welfare benefits must be acted upon and the first payment made to eligible applicants within thirty days of the filing of the application and that eligible applicants whose claims have not been passed upon within thirty days are entitled to have retroactive benefits from the thirty-first day following the filing of their applications, subject however to a provision that the foregoing shall not apply to instances where the state establishes that the delay is excused or justified by the provisions of Handbook Part IV, § 2300(b)(6).

Whether the injunction prayed for should be granted should be left to the sound discretion of the trial court for determining after such further hearing as he may deem appropriate on remand. By reason of the dismissal the court did not reach the injunction issue. Defendants have expressed a desire to comply with the thirty-day requirement and have indicated that they are taking steps to meet the requirement. The HEW pending investigation mentioned in footnote 1 may also aid in bringing about conformity with the federal laws and regulations.

By way of caveat, we state that the issue of the bar of the Eleventh Amendment to a suit against the state for accrued past due benefits was not reached by the trial court and is not reached by us. Similarly, the issue of whether the state has waived immunity from suit by accepting the federal grant is not determined. These issues are separate and distinct from our holding that jurisdiction exists under Ex parte Young, supra.

The judgment dismissing the complaint is reversed. The case is remanded to the trial court for further proceedings consistent with the views herein expressed.