**Mary GRANT, on behalf of herself, her family and the class they represent**

v.

**Walter W. COHEN, et al.**

**Civ. A. No. 84–5096.**

United States District Court,
E.D. Pennsylvania.

Nov. 5, 1985.

David A. Super, Community Legal Services, Inc., Philadelphia, Pa., for plaintiffs.

John O.J. Shellenberger, Deputy Atty. Gen., Philadelphia, Pa., for defendants.

## MEMORANDUM

GILES, District Judge.

Pursuant to Fed.R.Civ.P. 23(a), plaintiffs have moved for certification of a class consisting "of all residents of Pennsylvania requesting or eligible for the addition of children to their Aid to Families with Dependent Children (AFDC) grants, upon the children's return from foster care placements." [1] On behalf of the proposed class,

---

1. In their amended motion for class determina- tion, plaintiffs recharacterize the proposed class

the named plaintiffs, Mary Grant, Dorothy Perry and the Philadelphia Citizens in Action Group, seek both declaratory and injunctive relief which would ultimately result in defendants being judicially compelled to coordinate state and federal assistance programs such that children who are removed from their homes for foster care placement receive assistance promptly upon return home.

■ Defendants challenge the proposed class on several grounds: (1) there are insufficient questions of law and fact common to the proposed class members; (2) the claims of the representative parties are not typical of the claims of the class; and (3) the proposed class representatives will not adequately protect the interests of the class. Defendants simultaneously filed a motion to dismiss,[2] challenging plaintiff Mary Grant's standing to seek relief in this court. Because defendants focused on Grant's lack of standing as a factor precluding class certification, defendants did not press the issue of standing as to the remaining named plaintiffs. Def's Mem. in Resp. to Pls' Am.Mot. for Cl.Determ. at 3. However, because this court has plenary power over the issue of standing under Art. III of the Constitution, I will *sua sponte* rule on whether each has presented a sufficient case or controversy to withstand constitutional and jurisprudential limitations.[3]

Because I find that each of the named plaintiffs has failed to present a justiciable case or controversy, the above-captioned matter is dismissed without prejudice.

## I.

■ The doctrine of standing in the federal court delimits the persons who are permitted to challenge the legality of an act. In order to invoke the jurisdiction of the federal courts, a plaintiff must satisfy the threshold requirement imposed by Art. III of the Constitution by alleging an actual case or controversy. *Flast v. Cohen*, 392 U.S. 83, 94–101, 88 S.Ct. 1942, 1949–53, 20 L.Ed.2d 947 (1968). In order to present a live case or controversy, a plaintiff must show that he has " 'sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.' " *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983) (quoting, *e.g., Golden v. Zwickler*, 394 U.S. 103, 109–10, 89 S.Ct. 956, 960–61, 22 L.Ed.2d 113 (1969)).

■ Art. III requirements prohibit plaintiffs' reliance on abstract injury alone. No named plaintiff in the present action is immune from such a standard. If none of

---

to add "medical assistance (MA) cases." While the scope of the proposed class is rendered even more vague by the addition of this language, I find this language to be superfluous. The determination made by the county assistance agency as to AFDC eligibility also includes a determination as to medical assistance benefits. *See* Exh. B to Defs' Mem. In Opp. to Cl.Determ. (Income Maintenance Bulletin at 4). Plaintiffs' challenge is to the entire procedure used, by the defendants in processing AFDC eligibility claims. The addition of "(MA) cases" adds nothing to plaintiffs' argument.

2. Because the parties have presented, and I have reviewed matters outside the pleadings, defendant's motion must be treated as one for summary judgment. Fed.R.Civ.P. 12(b)(6). Plaintiffs were presented with a reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

3. *New Jersey Turnpike Authority v. Jersey Central Power and Light and General Public Utilities Nuclear Corporation, Inc.,* 772 F.2d 25, 30 n. 10 (3d Cir.1985). Although oral argument was conducted on plaintiffs' motion for class certification, plaintiffs' cannot now be heard to contest any procedural infirmities in my ruling on the motion to dismiss. First, my power to do so is plenary. Further, plaintiffs argued that each was herself capable of adequately representing the interests of the proposed class. Defendants opposed class certification arguing that no plaintiff had articulated a claim which could withstand the four-prong test of Fed.R.Civ.P. 23(a). Further, defendants ardently asserted that Grant had failed to state a case or controversy sufficient to pass constitutional muster. With these issues at hand, oral argument on the motion for class determination offered ample opportunity for the parties to address the issue of standing.

the named plaintiffs alleged to be class representatives establishes the requisite case or controversy with the defendants, none may seek relief on behalf of herself or any other member of the class.

## II. DISCUSSION

In the case before me, the controversy centers not on plaintiffs' request for monetary damages arising out of allegedly illegal activity, but rather, on a showing that plaintiffs are entitled to the requested equitable relief. The line of Supreme Court cases which guides this court begins with *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). In *O'Shea*, the Court observed that past exposure to some illegal conduct does not in itself demonstrate a case or controversy regarding injunctive relief, unless such past exposure is accompanied by continuing and present adverse effects. *Id.* at 495–96, 94 S.Ct. at 676. Past wrongs are but evidence bearing on the issue of whether there is a real and immediate threat of repeated injury. The prospect of future injury must be both real and immediate. *Id.* at 496, 94 S.Ct. at 676.

The *O'Shea* Court found that respondent had failed to demonstrate that it was more than speculation that he would be again exposed to prosecution under state criminal laws. The Court additionally found that even assuming the existence of Art. III standing, respondent had failed to state an adequate basis for equitable relief. In so concluding, the Court recognized the inherent overlap of case or controversy analysis where equitable relief is sought and the determination as to whether a complaint states a sound basis for equitable relief.

In *City of Los Angeles v. Lyons*, 461 U.S. 95, 109, 103 S.Ct. 1660, 1669, 75 L.Ed.2d 675 (1983), the result and reasoning of *O'Shea* was extended to cases where the plaintiff seeks to enjoin a sanctioned state practice assertedly violative of constitutional rights. *Id.* at 108–09, 103 S.Ct. at

1668–69. In *Lyons*, respondent sought an injunction prohibiting the use of "chokeholds" by Los Angeles police officers. Lyons alleged that he had been the victim of a police stranglehold after having been stopped for a minor traffic violation.

The Court, in reversing the Ninth Circuit's injunction against the City of Los Angeles prohibiting their use of strangleholds, held that Lyons had failed to demonstrate a case or controversy which would justify equitable relief. *Id.* at 105, 103 S.Ct. at 1666–68. While the chokehold may have given rise to a constitutional claim for damages under § 1983, the past injury and injuries did nothing to establish a real and immediate threat that he would again be subjected to such conduct. The Court stated that, for Lyons to establish a case or controversy, he would have to allege not only another encounter with the police but also, that he would again be subjected to another chokehold. The Court concluded that the alleged prospect of repetitious illegal conduct was purely speculative.

The Court went on to reject the Ninth Circuit's conclusion that the case should be analysed under the doctrine of mootness. Despite the fact that the case involved government action of unusually short duration,[4] the *Lyons Court* stated that the issue was not whether the claim was moot, but rather, whether Lyons met the preconditions for asserting injunctive relief. *Id.* at 109, 103 S.Ct. at 1669. Nevertheless, the Court proceeded to consider "normal rules of equity" which may be applied to cases where the illegal act complained of is terminated, yet for equitable reasons it should remain a justicable case or controversy. The Court rejected the Ninth Circuit's contention that the mere cessation of the alleged illegal act did not end the continuing nature of the controversy. The Court concluded that the cessation of the allegedly illegal activity was unrelated to the reason for his lack of standing—the speculative nature of his claim that he will

---

4. This examination of the mootness doctrine follows the Court's general rule that where the case involves government action, the court should consider the issue of whether the short— term nature of the action makes the issues capable of repetition, yet evading review. *Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115, 122, 94 S.Ct. 1694, 1698, 40 L.Ed.2d 1 (1974).

again experience injury as the result of the police force practice should it continue. *Id.* As to the "capable of repetition yet evading review" exception to the mootness doctrine, the Court found that Lyons' § 1983 claim gave a proper channel for review. *Id.* Further, the Court reasoned that the doctrine applies only to "exceptional circumstances" where the plaintiff can make a reasonable showing that he will again be subjected to the same action. *Id.; New Jersey Turnpike Authority, supra,* At 30. The *Lyons* Court found this standard to be no different from the requirement of concrete injury meritorious of equitable relief under Art. III, a requirement Lyons had not met.

Under analysis parallel to that used in *O'Shea,* the Court went on to hold that even if his suit afforded Art. III standing, the equitable remedy sought was equally unavailable absent a showing of "irreparable injury." This standard for injunctive relief is higher than the Art. III requirement that there be a showing of a real or immediate threat that plaintiff will again be wronged. Lyons' showing of speculative injury under Art. III was clearly insufficient to warrant injunctive relief. Further, the Court found that Lyons' suit for damages under § 1983 was an adequate remedy at law. The Court noted in refusing to intervene in the state's administration of its own laws that stringent standards for the grant of equitable relief are required because of "the special delicacy of the adjustment to be preserved between federal equitable power and state administration of its own law." *Id.* 461 U.S. at 112, 103 S.Ct. at 1670 (*quoting, e.g., Stefanelli v. Minard,* 342 U.S. 117, 120, 72 S.Ct. 118, 120, 96 L.Ed. 138 (1951)). The Court thus recognized the potentially dangerous oversight problems which might arise out of a supervisory role mandated by the equitable relief sought.

In this case, there are three named plaintiffs seeking injunctive relief. The nature and treatment of their assistance applications vary. They each present dissimilar, and certainly not identical claims.

### 1. *Mary Grant*

At oral argument, Mary Grant was the only plaintiff the parties focused upon or for that matter, discussed. Mary Grant is the mother of Dale Grant. In September, 1983, Dale was removed from her mother's home by judicial decree and simultaneously placed in a foster care home. Dale was included in her mother's lump sum AFDC grant while she was a live-in member of the household. However, when Dale was removed from the Grant home, the proportion of AFDC benefits assigned to Mrs. Grant for Dale's care was then assigned to the foster home.

By judicial decree, Dale was discharged from foster care placement and allowed to return to the Grant home on June 26, 1984. A letter from Grant's former welfare caseworker, J.V. Compher, indicated that emergency monies, if available, would appear to be "urgently needed" when Dale returned home. *See* Exh. F to Def's Mot. in Opp. to Cl.Determ. A "program description" outlining the conditions of Dale's return to the Grant home was given to plaintiff on the date of Dale's discharge. Such a description, signed by Mary Grant, indicated that the return was conditional, subject to the terms of the program description and further review by the court on September 20, 1984. While the agency had five options for its long-range placement goals for Dale, it chose to recommend her return to the Grant home.[5]

Grant asserts that the local department of public welfare ("DPW") informed the county agency of Dale's return home on June 26, 1984. However, Grant also admits that she received certain documents to

---

**5.** Dale's case worker had as options: (1) return to the family home; (2) placement in the home of a relative; (3) adoption; (4) planned permanent foster care or (5) independent living. I do not find the fact that the caseworker selected alternative number one, return to the Grant home, to be indicative of the difficulty associated with his determination. The placement procedure is indeed difficult and filled with necessary time delays to ensure proper action in what may be a volatile situation.

bring to the DPW. While Mrs. Grant alleges that she brought a letter to the county agency indicating Dale's return, there is no indication that such a letter was alone sufficient to trigger the return of AFDC funds. Rather, under procedures and instructions established by the DPW for eligibility determinations, the agency must make a redetermination of eligibility based on the current financial circumstances of the returnee family. Exh. A to Def's Mot. in Opp. to Cl. Determ. (Instructions for Eligibility at 3 ¶ 1(b)). Accordingly, while the child returns home on a predetermined date, the AFDC eligibility determination based on the child's return may not be made at the same time. For example, in the case before me, it is unclear when plaintiff actually requested a formal interview for the purposes of eligibility redetermination. Grant was in fact given an eligibility interview on July 17, 1984 some three weeks after Dale's return. Exh. C to Defs' Interrog. at ¶ 5(a); *id.* (Affidavit of Loretta Gordon at ¶ 4).

6. On October 25, 1984, plaintiff actually received benefits for Dale's return to the AFDC grant. The emergency check covered the period from July 17, 1984 to November 7, 1984. Defendants contend that as of October 23, 1984, the time Grant's benefits were authorized, there was no case or controversy. Plaintiff, on the other hand, makes two contentions in an effort to avoid strict application of Art. III principles. First, plaintiff asserts that her filing of a motion to proceed in *forma pauperis* was the commencement of suit for purposes of determining plaintiff's standing. A complaint tendered in *forma pauperis* cannot technically be filed until leave to proceed in *forma pauperis* has been granted. Fed.R.Civ.P. 3. While the filing of the in *forma pauperis* motion may be sufficient to toll certain limitations periods, *see, e.g., Adams v. Heckler,* 624 F.Supp. 63 (E.D.Pa.1985) (Ditter, J.) (60-day provision of § 205(g) of Social Security Act); *Move Organization v. City of Philadelphia,* 530 F.Supp. 764, 766 (E.D.Pa.1982) (§ 1983) (Giles, J.). I find the tolling rationale inapplicable to the issue of standing. The concerns of Art. III standing are considered as of the filing of the complaint,—here, December 3, 1984. The equitable reasons for using the date of the in *forma pauperis* motion to determine whether procedural limitations should be avoided for equitable reasons is inapposite to the constitutional concerns referenced in Art. III. Accordingly, I reject plaintiff's contention that

Loretta Gordon, an income maintenance worker employed by the Philadelphia County Assistance Office, received Mary Grant's case on reassignment in June 1984. *Id.* Affidavit of L. Gordon at ¶ 3). Gordon conducted the eligibility interview with Grant on July 17. At that time, Grant made Gordon aware of the need to return Dale to the AFDC grant and presented paper evidence of Dale's return. *Id.* at ¶ 7. In September 1984, Gordon transferred Grant's file to yet another caseworker. The next caseworker assigned to the Grant file was Brenda Finch. Mrs. Grant informed Finch that the agency had failed to take any action. *Id.* (Affidavit of B. Finch at ¶ 3). Finch mailed Mrs. Grant an eligibility application and rescheduled an interview with her. *Id.* at ¶ 6. All eligibility forms were completed by Mrs. Grant by October 18, 1984.

On October 19, 1984, plaintiff commenced this lawsuit by filing a petition to proceed in *forma pauperis* on October 19, 1984.[6] Prior to learning of plaintiff's

the complaint was filed prior to December 3, 1984.

Second, plaintiff asserts that even if the complaint is deemed filed as of December 3, 1984, she has stated a claim for a "continuing violation." Even though she has been paid benefits from July 17, 1984 to present, she alleges that she is still owed monetary benefits dating from June 26, 1984 to July 17, 1984. In response to plaintiff's assertions, there is no indication from plaintiff's pleadings that she is entitled to such monies. There is no evidence or any allegation of any breakdown in the administrative process until July 17, 1984, the date on which her eligibility interview took place. Further, plaintiff has failed to pursue any available administrative method whereby such funds could be recovered. Moreover, defendant's alleged failure to pay the correct amount of AFDC benefits is at variance with plaintiff's primary contention and request for relief. Plaintiff claims that defendants failed promptly to process her claim for AFDC benefits upon her daughter's return from foster care. Plaintiff asserts that defendants' procedures and practices are "unnecessarily slow, unreliable and uncoordinated." At no point in the original or amended complaint does she cite to universal failure to undercut the amount of AFDC funds awarded. Should this court decide to grant equitable relief in the form of an injunction that prohibits processing delays by the county assistance agency when making AFDC eligibility redeterminations, such

legal action, Finch authorized the addition of Dale to her mother's AFDC grant. On October 25, 1984, Grant was given emergency AFDC assistance for Dale for the period between July 17, 1984 and November 7, 1984. *Id.* at ¶ 7, 8. Joyce Stewart, the district administrator for plaintiff's district in Philadelphia County admits that the agency was, at a minimum, negligent in failing to determine promptly the eligibility of Dale Grant for AFDC after the agency was notified on July 17, 1984 of Dale's return to the Grant home. *Id.* (Affidavit of J. Stewart at ¶ 3).

It is well-established that AFDC applicants are entitled to prompt financial assistance as a matter of right. *Id.* at 804. The federal assistance statute provides that aid shall be furnished with "reasonable promptness" to all "eligible" individuals. 42 U.S.C. § 602(a)(10). Further, should an individual's claim for benefits not be acted upon with "reasonable promptness," the state agency must provide an opportunity for a fair hearing. *Id.* § 602(a)(4). The requirement of "reasonable promptness" and the hearing remedy prescribed by the Act for the deprivation of timely determinations do not, however, automatically entitle plaintiff to relief in this court.

Despite the compelling nature of the wrong suffered by the Grant family, the issue before me requires an analysis of the individual facts surrounding Grant's claim as it relates to the type of relief which she seeks. Grant's purported injury is the direct result of defendant's failure to process timely her claim for reeligibility. The magnitude of her injury is in direct proportion to her financial need. In this case, the caseworker noted the hardship to plaintiff if Dale were not returned to the family AFDC grant. The financial as well as the psychological strain resulting from the agency's delay may well give rise to an

injury of constitutional dimension. While I am well aware of the fact that monetary relief may be awarded in welfare cases for a state's violation of guaranteed constitutional rights of welfare recipients, *see, e.g., Like v. Carter,* 448 F.2d 798, 802 (8th Cir. 1971), *cert. denied, Carter v. Like,* 405 U.S. 1045, 92 S.Ct. 1309, 31 L.Ed.2d 588 (1972) plaintiff does not seek money damages for any purported violation of her constitutional rights, but rather, she seeks declaratory and injunctive relief premised on defendants alleged past and anticipated future conduct.

■ In order to establish a case or controversy under Art. III, Grant must demonstrate a real or immediate threat that she will again be subjected to the same illegal conduct which caused her past injury. *Lyons,* 461 U.S. at 108–09, 103 S.Ct. at 1668–69. In effect, Grant must allege not only that her daughter will be twice removed from her home, but also the somewhat incredible assertions that (1) she will be returned again to the Grant home and (2) that Grant's application for the return of AFDC benefits will be completely forgotten by one caseworker. In order to find that this burden of proof has been met, I must make several assumptions I am simply not willing to make.

First, while there is continued judicial oversight of the Grant family situation, there has been no contention, either in the briefs or at oral argument, that the family situation is explosive. There is no indication that the September 20, 1984 court review or any subsequent court review resulted in a decision to remove Dale from her natural mother. This court will not assume the presence of family discord. Grant's contention that there is a real and immediate threat that her daughter or other children will be removed from her AFDC grant is purely speculative. The program

remedy would be ineffective in correcting alleged deficiencies in the size of AFDC grants. I therefore decline to accept plaintiff's "continuing violation" theory and thus will evaluate the issue of standing on the basis of plaintiff's December 3, 1984 complaint.

As to the additionally-named plaintiffs, the amended complaint was filed on April 30, 1985. It is from this date that the issue of their standing must be evaluated.

description designed by the local agency is designed to prevent reoccurrences of foster care maintenance. The return of benefits apportioned to Dale Grant and assigned to Mary Grant is designed to ensure that Dale remains at home. Furthermore, if Dale is again removed from the family home, the agency could exercise its option to choose an alternative to returning Dale to the family household. Indeed, she might never be returned to her original family. *See* note 4 *supra.*

Second, plaintiff asks this court to assume that she will again be wronged by the local agency. Plaintiff expounds in detail upon what she believes are egregious bureaucratic errors in her complaints. However, it is the very detailed description of the claim which makes her claim unique. The complaint of Mary Grant hinges on the particular facts of a single incident. It does not draw into question defendants' universal application of the statutory scheme. Such a claim does not state a cause of action for general prospective relief. *See International Union of Bricklayers and Allied Craftsmen v. Meese,* 761 F.2d 798, 806 (D.C.Cir.1985). In her affidavit, Loretta Gordon, plaintiff's county office caseworker, admitted that she did not act on Grant's request from July 17, 1984 to mid-September, 1984. Furthermore, the district administrator of the county office admitted that Ms. Gordon had improperly failed to act on plaintiff's claim as of July 17, 1984. While it is apparent that backlogs of eligibility applications exist at the county assistance level, there is no indication that normal processing delays were the cause in fact of plaintiff's deprivation. For this court to assume recurrent negligence in the nature exhibited by Gordon's conduct in the Grant case, it would have to speculate. Such speculation is not demonstrative of a real or immediate threat of recurrent harm. Given the nature of AFDC eligibility determinations, it would not be surprising or unnatural for certain delays to occur. However, it is conjecture that defendants will, unless enjoined, routinely act unconstitutionally or without legal excuse.

■ Even if I assume that plaintiff has Art. III standing to seek an injunction, such equitable remedy is unavailable absent a showing of irreparable injury. *Lyons,* 461 U.S. at 111, 103 S.Ct. at 1670. A failure to demonstrate any real or immediate threat of future wrong is insufficient to meet the more severe burden of showing irreparable injury.

■ Further, plaintiff has or had alternative remedies for compensation for any injury she sustained. If plaintiff believes that the temporary deprivation of AFDC funds due to violation of federal law gives rise to a constitutional injury meriting an award of money damages, a § 1983 action is not beyond cavil. Further, Pennsylvania law provides direct recourse for welfare recipients against the state agency where applications for funds have not been timely processed. *See* 55 Pa.Code § 275.-1(a)(4)(i)(E). Exhaustion of such administrative review procedures, while not a prerequisite to the initiation of a § 1983 suit, is nevertheless an attempt to protect applicants against due process violations.

There is a delicate balance of state-federal authority created by Pennsylvania's oversight over the administration of the state-federal cooperative laws governing welfare determinations. *See Lyons,* 461 U.S. at 112, 103 S.Ct. at 1670–71. Due to the speculative nature of plaintiff's claim for injunctive relief, I decline to interfere with this process. Plaintiff has failed to establish the presence of concrete facts demonstrating the real likelihood that she will be subject to the same injury. Whether viewed as a failure to state a claim for the requested relief or as an inability to demonstrate Art. III standing, Mary Grant's claim for injunctive relief must be dismissed.

I must also decide the appropriateness and the merits of the request for declaratory relief irrespective of my conclusion as to the propriety of the issuance of an injunction. I must determine " 'whether the facts alleged, under all the circumstances, show that there is a substantial controver-

sy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Super Tire Engineering Co. v. McCorkle,* 416 U.S. 115, 122, 94 S.Ct. 1694, 1698, 40 L.Ed.2d 1 (1974). As with the request for injunctive relief, the concreteness of the factual situation and the adversity of the parties remain viable considerations. *Jersey Central Power & Light Co. v. New Jersey,* 772 F.2d 35, 40–41 (3d Cir.1985).

Plaintiff asks this court to declare unlawful (1) defendants' failure to pay AFDC benefits promptly to children returning home from foster care placements as the result of their failure to coordinate local, state and federal assistance programs and (2) defendant's failure to develop and implement individualized case plans for children in foster care to ensure prompt return of assistance upon the child's return home.

■ Plaintiff's controversy with defendants ended prior to the initiation of suit. She no longer presents a substantial controversy that is sufficiently immediate to require the issuance of a declaratory judgment.[7] Plaintiff has suggested no set of facts which persuade me that sufficient adversity remains between the parties. Mere probability of recurrent injury is no more beneficial toward establishing a claim for declaratory relief than it is toward demonstrating entitlement to equitable relief. Moreover, the substantive issues presented cannot be decided if I can afford the complaining party no effectual relief.

As previously stated, the facts of Mary Grant's case are unique. There is an admission of negligence on the part of the agency. There has been no showing under the facts of this case that failure to coordinate local state and federal programs was the cause in fact of any injury sustained by plaintiff. Further, plaintiff has failed to allege facts sufficient to demonstrate that any deficiency in the local procedures gave rise to the negligence of one caseworker. To declare defendants' application of local, state and federal law invalid based on the delay occasioned by a single actor is not a substantial controversy warranting the declaratory relief sought by plaintiff. To declare illegal defendant's failure to develop and implement further law to ensure prompt payment would be in direct derogation of federal law. Defendants are not required by federal or state law to legislate—they have met their obligations by making eligibility redeterminations with reasonable promptness and by affording administrative review if such obligations are not met.

■ Further, there is no indication that the requested relief is an appropriate remedy. Much like the request for injunctive relief, plaintiff asks this court to interfere with an already-in-place procedure for contesting the conduct of defendants when there has been a lack of reasonable promptness in processing. There is no averment that plaintiff has pursued the statutorily-prescribed administrative appeal route. These appellate procedures are designed to protect the very due process rights which plaintiff contends were violated by defendants' actions. It would be imprudent for this court to grant broad injunctive and/or declaratory relief where plaintiff has not even attempted to exhaust all available

---

**7.** Under the principles set forth in *Super Tire,* 416 U.S. at 122, 94 S.Ct. at 1698, if the case involves governmental action by necessity of short duration, the court must assess whether the issues presented are "capable of repetition, yet evading review;" so that the complaining party is adversely affected by the government "without a chance of redress." *Jersey Central Power & Light,* At 40 (citing *id.*) While the above cases presented facts which properly invoked the doctrine of mootness, the Grant case was not mooted by any post-filing government action. However, even if I were to apply normal rules of equity, plaintiff is still required to show that she will again be subjected to the alleged illegality. *Lyons,* 461 U.S. at 109, 103 S.Ct. at 1669. There must be something more than mere probability to keep the case alive, *New Jersey Turnpike Authority v. Jersey Central Power and Light,* 772 F.2d 25, 31–32 (3d Cir. 1985). Here, plaintiff has failed to demonstrate a reasonable expectation that the conduct complained of will recur. Rather, her hope for justiciability resides in mere " 'theoretical possibility.' " *Id.* At 33.

state-federal remedies. Since plaintiff has failed to demonstrate an entitlement to the desired relief, this court is reluctant to interfere with the state's administration of its own laws. *See Lyons,* 461 U.S. at 112, 103 S.Ct. at 1670–71.

### 2. *Philadelphia Citizens in Action Group*

In plaintiff's amended complaint, the Philadelphia Citizens in Action Group ("Action") is listed as a named plaintiff. The group is alleged to be an organization of welfare recipients, "some of whom have had children returned from foster care placements and been unable to obtain AFDC and MA benefits for those children promptly from defendants."

 First, plaintiff Action has failed to demonstrate an injury sufficient to meet the case or controversy requirement. Action's complaint clearly seeks relief on its own behalf. Although it alleges that several of its members have been injured by defendants' conduct, it is not on their behalf that they seek remedial relief from this court. Action must demonstrate some concrete and demonstrable injury to the organization's activities. Action asserts that it has expended time, money and other resources advocating "on behalf of families whom defendants had denied AFDC and MA benefits for children returned from foster care placements." I find plaintiff's complaint woefully deficient. First, at no point does Action assert that its primary or major focus was to ensure prompt resolution of AFDC eligibility applications upon return of a child to the original home after limited placement in foster care maintenance. Rather, its interests in this action are a small part of its overall objectives. Second, Action's expenditure of funds, and its sole alleged economic or non-economic injury, was related only to families *denied* benefits upon their children's return from foster care. *See* Pl's Am.Compl. at ¶ 5. There is simply no nexus between this alleged cause of injury and the cause of injury alleged by its members or the remaining named plaintiffs. Grant and the unnamed members of Action alleged that they suffered injury not through denial of AFDC benefits, but through failure of defendants to process their applications promptly. In this case Action suffers a setback to its "abstract social interests." *See Havens Realty Corp. v. Coleman,* 455 U.S. 363, 379, 102 S.Ct. 1114, 1124–25, 71 L.Ed.2d 214 (1982). Standing is simply not "measured by the litigant's interest or the fervor of his advocacy." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 486, 102 S.Ct. 752, 766, 70 L.Ed.2d 700 (1982). However, Action has omitted to connect the alleged drain on its resources and the injury for which it alleges that its members seek relief. The palpable injury for which action seeks relief is clearly unremediable by the relief requested. To declare defendants' actions in violation of the "reasonable promptness" requirements of state and federal law and to enjoin them from conduct in further violation of such laws is not a remedy for alleged improper denials of AFDC and MA benefits. Moreover, similar to the claims of Mary Grant, Action is not entitled to injunctive or declaratory relief unless it demonstrates a real and immediate threat of recurrent harm. Action and its members are not alleged to suffer present harm. Rather, its sole basis for standing for equitable relief is the past wrong suffered by its members. Even if Action sought relief on behalf of its injured members, the amended complaint lacks sufficient specificity to allege any more than a speculative basis on which such relief may be awarded. Accordingly, as to Action, there is no case or controversy sufficient to withstand constitutional or prudential scrutiny.

### 3. *Dorothy Perry*

The complaint of the third named-plaintiff, Dorothy Perry, presents analytical difficulties. This is not so much attributable to genuinely difficult legal issues as it is to the parties failure to develop an adequate factual record. Perry's daughter was re-

turned to her from foster care placement on October 31, 1984. She alleges that, as of April 15, 1985, she had applied for but had not received AFDC payments or MA coverage on behalf of daughter Lucia. Due to inadequate medical attention at home, Lucia had been placed under the care of several foster parents. *See* Pl's Am.Compl. at ¶¶ 48–50. The only discernable reason that Perry maintains that she had not received her benefits is because her caseworker refused to acknowledge eligibility without Perry's having taken appropriate steps to seek child support for Lucia and one of Lucia's siblings. *Id.* ¶ 58.

■ Assuming that Perry presents a live controversy,[8] and that she has suffered a palpable injury, the relief requested must provide redress for the injury asserted. *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979). From the face of the complaint, the cause of Perry's failure to obtain benefits for Lucia may be unrelated to an alleged failure to coordinate local, state and federal assistance programs in such a manner as to ensure the prompt processing of eligibility redeterminations. Rather than administrative snafus and bureaucratic failure, Perry may well be not entitled to benefits as a matter of law. The amended complaint lacks such specificity that this court is unable to determine whether Perry's daughter was ever determined to be eligible for addition to her mother's AFDC grant. Whether his scenario is even parallel to that of the purported class members is questionable. Dale Grant had been part of her mother's AFDC grant. Mary Grant's challenge to the conduct of defendants was their failure to process timely her eligibility application upon Dale's return from foster care. There is sufficient diversity between the Perry and Grant cases that this court is reminded of the peculiar nature of each eligibility case and the vagaries of bureaucratic decision-making. I am led to the inexorable conclusion that Perry has failed on the face of the complaint to state an injury which may be redressed through the requested relief.

■ Further, an order declaring defendants in violation of the "reasonable promptness" requirements or an injunction cannot be used to avoid exhaustion of administrative proceedings designed to provide an adequate remedy. *See Indiana Hospital Association, Inc. v. Schweiker*, 544 F.Supp. 1167 (S.D.Ind.1982), *aff'd*, 714 F.2d 872 (1983), *cert. denied*, 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984). Even if plaintiff has suffered a live and palpable injury, she may, at this time, unlike Grant, maintain an action within the administrative agency to contest both denial of assistance as well as undue delay in acting upon an application. 55 Pa.Code § 275.1(a)(4)(i)(A), (E); 42 U.S.C. § 602(a)(4). Without pursuing these remedies at law, plaintiff circumvents the state-imposed system of review. The state agency is more able to address the differences created by the individual nature of the AFDC claims. For this court to enter into the case, while administrative remedies still lie, would be to overstep the bounds of federal-state comity. Should plaintiff's claim become moot, it may well give rise to a claim under § 1983. A civil rights claim to collect identifiable monies owed as the result of the deprivation of necessary welfare aid is an adequate alternative remedy to protect the rights of such recipients.

Accordingly, because Perry has failed to request relief which will adequately redress her alleged injury, and because she has failed to state a claim for equitable relief her claim must be dismissed.

Since none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with defendants, none may seek relief on behalf of

---

8. Defendants' answer indicates that Perry's claim is now moot. *See* Def's Ans. to Pl's Am. Compl. at 11. However, there is insufficient information upon which this court may so conclude. Neither party has properly addressed this issue.

Even if the action as to Perry is moot, the result which follows is unchanged.

himself or any other member of the class. *O'Shea*, 414 U.S. at 494, 94 S.Ct. at 675.[9]

For the foregoing reasons, the action is dismissed.

**9.** The lack of standing of the named plaintiffs to raise the class claim is buttressed by the incongruous nature of the class plaintiffs they seek to represent. At oral argument, the class was restricted to those whose children were returned to the houses of their natural parents. Further, the class was limited to situations where AFDC recipients were not given additional grants with reasonable promptness upon a child's return from foster care. Since one case probably involved the denial of benefits altogether and one involved admitted negligence by a single caseworker, the case hardly presents an amalgam of similar cases. The fact that the specific claims of injury do not positively coincide with wrongful practices charged serves to bolster my conclusion that these plaintiffs cannot invoke federal jurisdiction to hear the claims they present in support of their request for equitable relief.